UNITED STATES DISTRICT COURT CENTRAL
DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No: 19-10021 |
| | ) | |
| JOHN M. HENIGAN, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM
OF EVIDENCE FROM THE SENTENCING HEARING ON JULY 6, 2021**

The Defendant, JOHN M. HENIGAN, by MARIBETH EGERT DURA, his attorney, hereby submits this Memorandum of Evidence from the Sentencing Hearing on July 6, 2021, as ordered by this Court at the conclusion of the first half of the Sentencing Hearing previously held on July 6, 2021. Additionally, at the end of this Memorandum, to aid the Court and parties, the Defendant submits a Sentencing Exhibit List of those Exhibits marked and admitted thus far at the July 6, 2021 hearing.

**DEFENDANT'S WITNESSES.**

| **Sentencing Transcript Page** | **Summary of Jeffrey Stolz** |
|---|---|
| Pg.16 | Jeffrey Stolz is a detective with the Pekin Police Department and has been a police officer for 26 years. He is a task force officer with the DEA working narcotic cases in Central Illinois. |
| | He spoke to John Henigan on June 4, 2019, in a post-arrest statement. |
| Pg. 17 | In the course of his post-arrest statement, Mr. Henigan gave him 2 customers' names, Casey and Aaron, who he said was a couple and told him they lived on Bigelow Street in Peoria at that time, and that he served them in Peoria, Pekin, |

and Creve Coeur, beginning in 2017, and their drug of choice was heroin and crack. He served them for a year straight in 2017. He also said Casey would get a social security check the first of each month and at times he would give her credit.

Officer Stolz testified he never tried to verify any of the information above after the post-arrest statement.

Pg. 19    Officer Stolz testified he was given a name of Casey Winger from the 1st revision of the sentencing report as the Casey, Mr. Henigan was referring to in his post-arrest statement. The name given to him was Casey Winger who lived on Bigelow Street, Peoria. Officer Stolz testified he did not follow up with verifying that information.

Pg. 19    Officer Stolz testified that through his investigation of John Henigan, Officer Stolz was aware of the Morton Police Department report involving an interview of Casey Smith. Officer Stolz reviewed that report which was marked as Defendant's Exhibit #2. When Casey Smith was interviewed by the Morton Police Department, she said her source was a person named "Bear," with a description black male, 20 – 40 years of age, and dreadlocks. (Also see Defendant's Exh. 2). Officer Stolz said he tried to verify whether John Henigan had ever had dreadlocks by going back and looking at past pictures and he did not find any with Defendant having dreadlocks. He testified Mr. Henigan pretty much had a shaven head. He testified that Casey Smith said that the person named Bear, BM, 20 – 40 years of age with dreadlocks was the person she got the heroin from that she gave to Joseph Mortimeyer.

Pg. 23    Officer Stolz testified that Defendant told Officer Stolz that one of his customers was Jennifer Adolphson. He had been serving her approximately 7 – 8 months prior to January 2, 2017, and had not served her at all since March of 2017.

Jennifer Adolphson died of an overdose in May of 2017. She died 12 days after police found her at the residence.

Pg. 24    Officer Stolz testified that he had no evidence direct or indirect that Jennifer Adolphson died from heroin received from John Henigan.

Stolz spoke to Henigan in his post-arrest statement about the January 2, 2017 incident where Stephanie Bradley overdosed at Jennifer Adolphson's house and John stated he did not know Stephanie Bradley.

Officer Stolz testified that there was no witness to his knowledge that actually says that the heroin that Jennifer Adolphson bought from John Henigan was the same heroin that Jennifer Adolphson shot into Stephanie Bradley. He said Jennifer Adolphson was a heroin addict.

| | |
|---|---|
| Pg. 26 | Officer Stolz testified that in the Morton Police Department report (Defendant's Exh. 3) it states that Stephanie Bradley said she walked from her house to Jennifer Adolphson's house because she says – that Adolphson used and had heroin, and Bradley said she communicated by text message with Adolphson to arrange to meet. |
| Pg. 28 | Officer Stolz testified Stephanie Bradley specifically said the 2 subjects in the red vehicle were not connected to her in any way. She went to Adolphson's house to get some relief for her back because she was out of a prescription. |
| Pg. 28 | Officer Stolz testified that he had no idea from the investigation who got there (the Adolphson residence) first. |
| Pg. 29 | Officer Stolz testified that the Morton Police Department report (Defendant's Exh. 3) stated that Nicholas Eagan was at the Adolphson house that day and arrived at 3:00 p.m. on January 2, 2017 and immediately shot heroin with Adolphson. |
| Pg. 30 | Officer Stolz testified that it was possible for heroin addicts to make sure they have heroin on hand at all times depending on several factors on how bad their addiction was, how much money they have, their access to dealer. |
| Pg. 31 | Officer Stolz testified he assumed that since Eagan's statement in Defendant's Exhibit 3 stated that he did not know Bradley at all, but soon after she arrived, she and Adolphson went back to the bathroom and were in there for a few minutes that would indicate Eagan was there before Stephanie Bradley got there. |
| Pg. 31 | Officer Stolz testified Stephanie Bradley told the Morton PD in her interview (Def. Exh. 3) that Jennifer shot herself up first and then shot Stephanie.<br><br>Officer Stolz testified that Stephanie Bradley stated in the Morton Police Department Report (Defendant's Exh. 3) that Jennifer Adolphson had Sean Stone remove all needles and paraphernalia that was at the home. |
| Pg. 34 - 35 | Officer Stolz testified that Dan O'Brien spoke to him via a proffer agreement and O'Brien was also interviewed by Captain Tarby from the Tazewell County Sheriff's office wherein he was a suspect because he was the one who actually delivered heroin to Seth Rhodes that, at least, he believed killed him. (See Defendant's Exhibit 1). |
| Pg. 35 | Officer Stolz testified that in that interview Dan O'Brien gave information that it was the heroin that Dan O'Brien bought from "Bear" that may have had something to do with Seth Rhodes' death. |

Pg. 36      Officer Stolz testified that he couldn't recall if he had any information other than Dan O'Brien's information that would connect John Henigan to Seth Rhodes' death. Dan O'Brien was not arrested, not charged, and had no pending criminal charges at the time he was questioned by the Morton Police Department. Additionally, Dan O'Brien gave testimony in a grand jury proceeding.

Pg. 39      Officer Stolz testified that the only other physical evidence that would indicate that Dan O'Brien purchased heroin from Defendant on April 29, 2016, when this buy was supposed to have occurred, was that Dan O'Brien gave police Heinigan's phone number from his phone, and that O' Brien had phone calls to Mr. Henigan. He couldn't remember specific dates and didn't know if the phone calls were on 4/29/16. O'Brien provided a phone number and phone calls on specific dates but did not know if there were any calls between the two on the date the heroin was bought on 4/29/2016.

**Cross Examination of Jeffrey Stolz**

Pg. 40      Officer Stolz testified that Govt. Exh. 1 is a report that memorializes the post-arrest statement of John Henigan. The interview lasted 2 ½ hours.

Pg. 41, 42 & 45      Officer Stolz testified that the Govt. Exhibit 2 which was purported to be a demonstrative exhibit of the customers that Mr. Henigan indicated he had served in his post-arrest statement (Govt. Exhibit 1).

Pg. 43      Officer Stolz testified that the Defendant never told him that he had served Stephanie Bradley, Casey Smith, Joseph Mortimeyer or Seth Rhodes.

Pg. 50      Officer Stolz testified Defendant freely gave information to Officer Stolz as to numerous individuals he had sold to and bought from and provided an estimate of what he usually sold or bought. (See Govt.'s Exhibit 1). The customers that Officer Stolz verified by information from people named by the Defendant were Mark & Rachel, Sara, Tera & Allen, Jennifer Adolphson, Lucky (Dustin Darling), Dennis "Bo" Campbell.

Pg. 63      Officer Stolz testified that regarding Jennifer Adolphson's overdose there was no evidence connecting her overdose death to John Henigan.

Pg. 76      Officer Stolz testified that Alex Miller's overdose death would not be attributable to John Henigan because he had been incarcerated for some period of days before the overdose.

Pg. 78      Officer Stolz testified at the time of the arrest, the Defendant had left 7.8 grams of

heroin in the squad car and 17.4 grams of crack found in 12 individually wrapped baggies on his person.

### **Direct Examination of Daniel O'Brien**.

| | |
|---|---|
| Pg. 84 | O'Brien testified he signed a proffer letter with the US Goverment with the advice of his attorney, Dale Thomas. |
| Pg. 85 | O'Brien testified that he agreed to tell the truth fully when asked and to not minimize or exaggerate. No promises were made. |
| Pg. 85 | O'Brien testified that he was a self-admitted crack cocaine addict for 7 years. |
| Pg. 86 | O'Brien testified he would spend $800.00 a day to support his habit. He was not a heroin user. |
| Pg. 87 | O'Brien testified that he knew Seth Rhodes from Seth being his cellmate in Tazewell County Jail where he first met him. They were in jail for a couple of months and became friends. |
| Pg. 88 | O'Brien testified that through his friendship of Seth Rhodes, he learned of his heroin addiction. On April 29, 2016, Dan O'Brien was with Seth Rhodes. |
| Pg. 88 | O'Brien testified Seth had an addiction, all of his sources stopped talking to him because he was trying to get clean. |
| Pg. 90 | O'Brien testified he provided Seth drugs through a source, "Bear." He met him through Aaron Pretzel. He bought crack from him with Aaron and Jeno. |
| Pg. 92 | O'Brien testified he first met Bear a couple of months before Seth Rhodes death. He typically purchased 8 balls (3.5 grams) at a time 2 or 3 times a day, sometimes 4. O'Brien said he had occasion to connect Bear with other people who needed drugs. He took Seth Rhodes 4 or 5 times to buy heroin from Bear. Each time Seth got drugs from Bear through Dan, so Seth wouldn't have known Bear and Henigan wouldn't have known Seth. |
| Pg. 94 | O'Brien testified he met up with Seth Rhodes to buy drugs and he met Seth at RiverPlex in the afternoon. Seth had $120.00 for heroin and $40.00 to throw on crack. O'Brien had $200.00 for crack. |
| | O'Brien testified he and Seth met Bear at Dunkin Donuts on Knoxville. O'Brien got out of the car, O'Brien got in Bear's car, got the drugs. He went back to car where Seth was and Seth drove back to RiverPlex. He gave Seth his crack and |

heroin and then they ended up smoking Seth's crack down at RiverPlex. Seth went on his way with his heroin.

Pg. 96  O'Brien testified Seth Facebook messaged him "that was some really good stuff" on 4/29/16. He found out that Seth Rhodes had died the next day and found out he had overdosed.

Pg. 97  O'Brien testified he continued to buy crack after that from Bear.

Pg. 97  O'Brien testified that he told Bear that "he overdosed and that was it and Mr. Henigan said that's fucked up."

Pg. 97  O'Brien testified he bought heroin from Mr. Henigan for Aaron and Aggie. I was getting it for someone else and he got it from me. He thought it was a month later.

O'Brien testified he continued to buy drugs from Henigan until June or July of 2016.

Pg. 98 & 99  O'Brien testified he gave the investigators the phone number for John Henigan.

### Cross Examination of Dan O'Brien

Pg. 99  O'Brien testified on April 29, 2016, during the buy at Dunkin Donuts, Seth Rhodes stayed in his car and Dan O'Brien went to John Henigan's car. He stated that's usually how the other buys went when he bought drugs for Seth from Defendant. So Henigan wouldn't have known Seth.

Pg. 99  O'Brien testified he never told Henigan he was getting the drugs for Seth.

O'Brien testified that he told John "Like the buddy I got my stuff for from you overdosed, yeah." And then he (ref. Henigan) said "That's fucked up."

Pg. 101  O'Brien testified that in his grand jury testimony he testified, "I told him he overdosed. He said that's fucked up."

Pg. 101  O'Brien testified that Seth Rhodes later messaged him and said, "thanks man, that's good stuff."

Pg. 103  O'Brien testified the only drug O'Brien saw Seth do was crack cocaine on April 29, 2016, and that was when he was with him when they smoked Seth's share of the crack on the way to the RiverPlex. He never saw him smoking any heroin and he didn't know what he did with the heroin. All he saw him use was crack cocaine that date.

| | |
|---|---|
| Pg. 104 | O'Brien testified that Seth didn't specifically refer to heroin as being good when Seth messaged him, "Thanks man, that was really good." |
| Pg. 104-105 | O'Brien testified he was buying and using with others anywhere from an 8 ball to a couple of grams up to 7 – 10 grams of crack cocaine a day.  He couldn't work because of his addiction so he stole for a living.  He forged checks, made and stole checks, made unauthorized charges for electronics on stolen credit cards and sold the items for cash.  He did whatever to feed his habit.

O'Brien testified he only saw Seth use heroin one time where he snorted it and that was the 2nd day he got out of jail. |
| Pg. 108 | O'Brien testified that he only got Seth heroin 4 or 5 times. $40 worth, $80 worth or $120 worth.  Seth didn't talk to him about his drug usage, he didn't know how much he was doing in between.

O'Brien testified he purchased heroin from Henigan after Seth overdosed for "Aaron and Aggie." |
| Pg. 110 | O'Brien testified when asked if Seth told him he was going to go sell the heroin that he had got, to a guy named Kyle, that he had no idea who Kyle is.  And no he did not tell him that.

O'Brien also testified, "All I know is that him and Blake probably intended to distribute some, if that's where we are going.  I don't know Kyle."

O'Brien was asked if he told Capt. Ryan Tarby from the Tazewell County Sheriff's Department, when he was questioned in 2016, (Defendant's Exh. 1), and did he tell him Seth was meeting someone at the RiverPlex to sell some of the heroin he had just purchased after they left Dunkin Donuts and that he thought that the name of the guy Seth was meeting with may have been Kyle. |
| Pg. 110-111 | O'Brien testified I'm sure I said it.  (See Defendant's Exh. 1). |
| Pg. 111 | O'Brien testified the last time he saw Seth was when he dropped him off at the RiverPlex on April 29, 2016, and the only contact he had with Seth after that was "thanks man, that was really good." |
| Pg. 113 | O'Brien testified his phone number was in Seth's phone. |
| Pg. 114 - 117 | O'Brien testified he entered into a proffer agreement with the Government. |
| Pg. 118 | O'Brien testified he didn't even know if Seth had smoked the heroin (he had gave him 4/29/16) but of his message from Facebook, he testified he obviously used it; yeah, that's my personal opinion, but I don't have any clue that he did , no."  He |

testified Seth never said on his Facebook message that he was referring to using heroin.

WHEREFORE, as outlined above, the Defendant submits this Memorandum to summarize the information previously received by the Court during the first part of the Sentencing Hearing and, also, to provide the Court with a list of Defendant's and Government exhibits that were admitted into evidence at the first part of the Sentencing Hearing. At the conclusion of the sentencing, the Defendant respectfully requests that the Court consider all the evidence submitted before the Court, including the credibility of the witnesses and the arguments of the parties, and adopt the objections and allow the Defendant his acceptance of responsibility points and for further relief as the Court deems just.

JOHN M. HENIGAN, Defendant

By: /s/ Maribeth Egert Dura
Attorney for Defendant
4507 N. Sterling Avenue, Suite 301
Peoria, IL 61615
Phone: 309-686-0895
duralaw@sbcglobal.net

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

katherine.legge@usdoj.gov
brianna.gibbs@usdoj.gov
caseview.ecf@usdoj.gov
susan.Roper@usdoj.gov

/s/Maribeth Egert Dura
Attorney for Defendant

Maribeth Egert Dura
Dura Law Office
4507 N. Sterling, Suite 301
Peoria, Illinois 61615
Ph:     (309) 686-0895
Fax:    (309) 686-0985
E-mail: Maribeth_Dura@hotmail.com

C:\Users\duralaw\Documents\Henigan, John\Summary of Sentencing Hearing.wpd